United States District Court
Southern District of Texas
**ENTERED**
February 24, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ORION PROJECT SERVICES (HOUSTON) LLC and ORION ENGINEERING SERVICES LTD., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-1401 |
| ACE AMERICAN INSURANCE COMPANY and THE HAYS GROUP, INC., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] are Plaintiff Orion Project Services (Houston) LLC's ("Orion Houston") Motion for Partial Summary Judgment on the Duty to Defend (Doc. 13), Defendant ACE American Insurance Company's ("ACE") Motion for Summary Judgment (Doc. 29), and Plaintiffs' Rule 56(d) Motion to Defer or Dismiss Portions of ACE's Motion for Summary Judgment that Require Discovery (Doc. 32). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Orion Houston's motion be **DENIED** and Defendant ACE's motion be **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' Rule 56(d) motion is **GRANTED**.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 23, Ord. Dated Sept. 16, 2016.

## I.  Case Background

Plaintiffs originally filed this insurance action against its commercial liability insurer for declaratory relief and damages for breach of the duty to defend and indemnify and violations of the Texas Insurance Code.

### A.  The Insurance Policy

Orion Houston purchased a commercial insurance policy (the "Policy") from Defendant ACE to cover the period September 4, 2012, to September 4, 2013.[2]   The Policy included a wide variety of coverages, including Employers Responsibility Coverages.[3]   The coverage territory encompassed anywhere in the world except the United States, its territories and possessions, and Canada, as well as any country or jurisdiction that was subject to trade or economic sanctions by the United States.[4]   Under Employers Responsibility Coverages, the Policy included Voluntary Compensation Coverage and Contingent Employers Liability Coverage.[5]

### 1.  Voluntary Compensation Coverage

The Voluntary Compensation Coverage applied:

to any claim for bodily injury by accident, bodily injury

---

[2]     See Doc. 13-1, Ex. 1-A to Orion Houston's Mot. for Partial Summ. J. on the Duty to Defend ("MPSJ"), Int'l Advantage Comm. Ins. Policy pp. 13, 17. For this exhibit, the court cites to the docket page number rather than the internal document page number.

[3]     Id. pp. 47-62.

[4]     Id. p. 17.

[5]     See id. pp. 47-62

2

by disease or bodily injury by "endemic disease" whether or not it is subject to or governed by any "workers' compensation law".  This bodily injury must be injury to [the insured's] "employee" and must arise out of and in the course of employment by [the insured].  Bodily injury includes resulting death.[6]

In adjusting a claim under this provision, the Policy stated, Defendant ACE would apply the workers' compensation laws of the state shown in the declarations for the applicable category of employees.[7]

### 2.  Contingent Employers Liability Coverage

Pursuant to the Contingent Employers Liability Coverage, Defendant ACE agreed to pay "all sums [the insured] legally must pay as damages because of bodily injury to [the insured's] 'employees,' provided the bodily injury is covered."[8]  The covered damages included those: "for which [the insured is] liable to a third party by reason of a claim or suit against [the insured] by that third party to recover the damages claimed against such third party as a result of injury to [the insured's] 'employee';" and "because of bodily injury to [the insured's] 'employee' that arises out of and in the course of employment, claimed against [the insured] in a capacity other than as employer."[9]

The Contingent Employers Liability Coverage provisions further

---

[6]     Id. p. 203.

[7]     See id. pp. 203-204.

[8]     Id. p. 56.

[9]     Id.

stated that the insurance applied to bodily injury, including that which resulted in death.[10]  "The bodily injury must arise out of and in the course of the injured 'employee's' employment by [the insured].  The workplace of the 'employee' must be within the 'coverage territory.'"[11]

### 3.  Provisions Applicable to Both Types of Coverage

The Policy defined "employee" for purposes of both of the Employers Responsibility Coverages to mean "anyone employed by the Named Insured including any voluntary worker.  At [the insured's] option, 'employee' may include individuals who are independent contractors with whom [the insured] ha[s] a written contract in which [the insured] agree[s] to provide them the benefits of 'voluntary compensation.'"[12]  "Voluntary compensation" was defined as "the medical, disability and other benefits prescribed by the 'workers compensation law' of the 'state' [the insured] choose[s] when [the insured] make[s] a claim."[13]  Applicable to both coverages, Defendant ACE assumed "the right and duty to defend at [its] expense any claim, proceeding or suit against [the insured] for 'voluntary compensation' benefits, for repatriation, or for

---

[10]     Id.

[11]     Id.

[12]     Id. p. 60.

[13]     Id. p. 61.

damages for employers liability payable by this insurance."[14]

**B.    The Underlying Litigation (the "Santiago Lawsuit")**

The fourth amended petition in the Santiago Lawsuit stated:

BP[15] hired Orion [Houston] in the State of Texas, who in turn recruited [Iluminado] Santiago [Jr.] [("Mr. Santiago")] to work at the In Amenas facility through communications on several occasions that initiated in Harris County, Texas. Orion [Houston] contracted with BP in Harris County, Texas[,] to hire contractors, like [Mr.] Santiago [], to work at its In Amenas facility.[16]

In November 2009, Orion [Houston] entered into an agreement with [Mr. Santiago] to provide requested services to Orion [Houston's] clients. Mr. Santiago was assigned to BP America Exploration as an Electrical Hazardous Area Installation Inspector to work in Algeria. On November 29, 2012, Orion extended the term of Mr. Santiago's contract through December 31, 2013.[17]

The Santiago Lawsuit plaintiffs' live pleading described events in 2012 and 2013, including terrorist attacks on Algerian military bases, that indicated an increased threat of a terrorist attack on workers at BP's gas plant facility ("BP's facility") where Mr. Santiago worked.[18]    On January 16, 2013, terrorists/militants infiltrated BP's facility and took control.[19]

---

[14]    Id. p. 59.

[15]    The petition named ten BP entities as defendants and referred to them collectively as "BP." See Doc. 13-1, Ex. 2-B to Orion Houston's MPSJ, 4th Am. Orig. Pet. in Santiago v. BP Am., Inc., Cause No. 2014-57278 (151st Dist. Ct., Harris Cty., Tex. Jan. 15, 2016) pp. 2-3 & n.1.

[16]    Id. p. 16.

[17]    Id. p. 27.

[18]    See id. p. 4.

[19]    See id. pp. 5, 33.

Mr. Santiago was one of the individuals who was captured, held hostage and, ultimately killed.[20]

On January 15, 2016, Estrella Santiago ("Mrs. Santiago"), along with her children and many other individuals, filed suit in the 151st District Court of Harris County against ten BP entities and a BP America Production manager serving at the In Amenas facility.[21]   The fifty-two-page, fourth amended petition raises claims brought by the heirs of six individuals killed during the attack, as well as the claims brought by one injured individual and his relations.[22]

Mrs. Santiago, who was an heir of Mr. Santiago, was the only plaintiff who named Orion Houston as a defendant.[23]   Mrs. Santiago and the others alleged that "Defendants were negligent and/grossly [sic] negligent in failing to protect its [sic] contractors, employees and invitees, including Mr. Santiago [and others]. . ., from conditions they knew, or had reason to know, created an unreasonable risk of harm to its contractors, employees and/or invitees."[24]   Another reference is made in the petition to the status of Mr. Santiago and others as "Defendants' invitees,

---

[20]    See id. pp. 5, 34-35.

[21]    See id. pp. 1-3, 7-14.

[22]    See id. pp. 7-9.

[23]    Id. p. 3.

[24]    Id. p. 35.

6

employees, contractors, and/or workers."[25]

Orion Houston submitted the Santiago Lawsuit to Defendant ACE for coverage consideration.[26] After reviewing the Santiago Lawsuit, the Policy, documents related to the Santiago Lawsuit, and communications with Orion Houston, Defendant ACE refused to provide a defense.[27] In a letter dated November 9, 2015, Defendant ACE informed Orion Houston of its decision, stating that the allegations did not trigger a duty to defend Orion Houston.[28]

## C.  **The History of this Lawsuit**

Plaintiffs filed this action on May 18, 2016, against Defendant ACE, which answered, raised numerous defenses, and counterclaimed for declaratory relief.[29] A month after Plaintiffs filed their answer to Defendant ACE's counterclaim, along with various defenses, Orion Houston filed its pending motion for partial summary judgment on the duty to defend.[30] On September 1,

---

[25]    Id. p. 40.

[26]    See Doc. 30, Decl. of Stephen J. Davis ¶ 5.

[27]    See id. ¶¶ 6, 9; Doc. 14-1, Ex. D to Def. ACE's Resp. to Orion Houston's MPSJ, Letter from Alicia G. Curran to Vincent Morgan Dated Nov. 9, 2015.

[28]    See Doc. 14-1, Ex. D to Def. ACE's Resp. to Orion Houston's MPSJ, Letter from Alicia G. Curran to Vincent Morgan Dated Nov. 9, 2015.

[29]    See Doc. 1, Pls.' Compl.; Doc. 10, Def. ACE's Ans., Affirmative Defenses, & Countercl. for Declatory J.

[30]    See Doc. 12, Pls.' Ans. & Affirmative Defenses to Def. ACE's Countercl.; Doc. 13, Orion Houston's MPSJ.

2016, Defendant ACE timely responded.[31]   The following day, the parties stipulated to Plaintiffs' filing an amended complaint adding The Hays Group, Inc., ("Hays")[32] as a defendant.[33]

In the amended complaint, Plaintiffs sought a declaratory judgment that Defendant ACE owed Plaintiffs the duties to defend and indemnify.[34]   Plaintiffs also sought damages against Defendant ACE for breaches of the duties to defend and indemnify, as well as for violations of Texas Insurance Code Chapters 541 and 542.[35] Against Defendant Hays, in the event that the Policy was not found to provide coverage, Plaintiffs alleged insurance intermediary liability and violations of Texas Insurance Code Chapter 541.[36]

On September 12, 2016, Orion Houston filed a reply in support of its motion for partial summary judgment.[37]   On October 7, 2016, Defendant Hays answered and asserted various defenses.[38]   On October

---

[31]   See Doc. 14, Def. ACE's Resp. to Orion Houston's Mot. for Partial Summ. J. on the Duty to Defend ("Resp. to MPSJ").

[32]   "Hays is an insurance intermediary that was involved in the review, assessment, broking, underwriting, negotiation, revision, placement, issuance and/or other actions in connection with the ACE policy and other policies." Doc. 17, Pls.' (Corrected) 1st Am. Compl. p. 1.   The court cites to the docket page number because the amended complaint itself is unnumbered.

[33]   See Doc. 15, Stipulation Dated Sept. 2, 2016; Doc. 16, Pls.' 1st Am. Compl.   On Sept. 3, 2016, Plaintiffs filed a corrected version of Plaintiffs' First Amended Complaint.   See Doc. 17, Pls.' (Corrected) 1st Am. Compl.

[34]   See Doc. 17, Pls.' (Corrected) 1st Am. Compl. pp. 14-16.

[35]   See id. pp. 16-18.

[36]   See id. pp. 19-20.

[37]   See Doc. 19, Orion Houston's Reply in Support of its MPSJ.

[38]   See Doc. 28, Def. Hays' Ans. to Pls.' 1st Am. Compl.

24, 2016, Defendant ACE filed a motion for summary judgment.[39] Defendant ACE filed an answer, defenses, and counterclaim to Plaintiffs' amended complaint.[40]   Plaintiffs filed a responsive pleading to Defendant ACE's counterclaim.[41]

On November 14, 2016, Plaintiffs filed the pending motion pursuant to Federal Rule of Civil Procedure ("Rule") 56(d) to defer or dismiss portions of Defendant ACE's motion for summary judgment to allow for discovery.[42]   Plaintiffs simultaneously filed a response to Defendant ACE's motion for summary judgment.[43]   On December 5, 2016, Defendant ACE filed a response to Plaintiffs' Rule 56(d) motion and, on December 6, 2016, a reply in support of its motion for summary judgment.[44]   Plaintiffs promptly filed a surreply to Defendant ACE's motion for summary judgment and a reply in support of their Rule 56(d) motion.[45]

The three pending motions are fully briefed and ready for the

---

[39]   See Doc. 29, Def. ACE's Mot. for Summ. J.

[40]   See Doc. 31, Def. ACE's Ans., Affirmative Defenses, & Countercl. to Pls.' 1st Am. Compl.

[41]   See Doc. 34, Pls.' Ans. & Affirmative Defenses to Def. ACE's Am. Countercl.

[42]   See Doc. 32, Pls.' Rule 56(d) Mot. to Defer or Dismiss Portions of Def. ACE's Mot. for Summ. J. that Require Disc. ("Rule 56(d) Mot.").

[43]   See Doc. 33, Pls.' Resp. to Def. ACE's Mot. for Summ. J.

[44]   See Doc. 35, Def. ACE's Resp. to Pls.' Rule 56(d) Mot.; Doc. 36, Def. ACE's Reply to Pls.' Resp. to Def. ACE's Mot. for Summ. J.

[45]   See Doc. 37, Pls.' Surreply in Resp. to Def. ACE's Summ. J. Reply; Doc. 38, Pls.' Reply in Support of Rule 56(d) Mot.

court's consideration.

## II. Rule 56(d) Motion

The court begins with Plaintiffs' Rule 56(d) motion to defer or deny portions of Defendant ACE's motion for summary judgment on the duty to indemnify and the extra-contractual claims. The court's decision on that motion informs its approach to the pending dispositive motions.

### A. <u>Rule 56(d) Legal Standard</u>

Rule 56(d) allows the court to defer or deny a motion for summary judgment, to grant time for discovery, or to issue any other appropriate order when the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The Fifth Circuit "broadly favor[s]" continuances for purposes of discovery when the party seeking the continuance "set[s] forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." <u>Am. Family Life Assur. Co. of Columbus v. Biles</u>, 714 F.3d 887, 894 (5th Cir. 2013).

### B. <u>Discussion</u>

Plaintiffs in this case argue that they require discovery on Defendant ACE's understanding of disputed Policy provisions, on

10

Defendant ACE's coverage intentions during underwriting of the Policy, on Defendant ACE's claims-handling process, on Defendant ACE's application in similar circumstances of provisions similar to the disputed Policy provisions, and Defendant ACE's "advertising, marketing, sale, placement, issuance and rating of insurance policies including 'voluntary compensation' coverage both inside and outside of Texas."[46]  Plaintiffs contend that they have been diligent in the pursuit of discovery related to the above issues.

Defendant ACE responds that its arguments on the duty to indemnify and the extra-contractual claims are related to the duty to defend.  "Simply put, each follows from the other and, if no discovery is needed for the duty to defend, no discovery is needed—at this stage and considering ACE's arguments—for the duty to indemnify and extra-contractual liability."[47]  Defendant ACE contends that it has nothing more to produce that is discoverable. "[U]nbridled discovery on [other unrelated, third-party claim files and underwriting files] would amount to an impermissible fishing expedition into matters outside the scope of discovery."[48]  Defendant ACE's position is that the Policy is not ambiguous; however, it agrees that, should the court find it to be ambiguous, "discovery of drafting or underwriting documents might become

---

[46]   Doc. 32, Pls.' Rule 56(d) Mot. p. 13.

[47]   Doc. 35, Def. ACE's Resp. to Pls.' Rule 56(d) Mot. p. 2.

[48]   <u>Id.</u>

relevant."[49]   Several pages of Defendant ACE's responsive brief is devoted to legal argument concerning whether the information Plaintiffs are seeking through discovery is discoverable.

The court has no intention of deciding potential discovery disputes as a factor in deciding whether Plaintiffs met their burden of demonstrating that they are unable to present facts in support of their opposition to Defendant ACE's motion for summary judgment.   Rule 56(d) does not require that the court make hypothetical rulings on discovery.

Plaintiffs provided a plausible basis for their assertion that the facts they specified in their motion exist and that those facts may influence the court's decision on Defendant ACE's motion for summary judgment with regard to the duty to indemnify and the extra-contractual claims.   Accordingly, Plaintiffs' Rule 56(d) motion is meritorious as it relates to the duty to indemnify and the extra-contractual claims to the extent that those issues cannot be decided on the same basis as the issue of Defendant ACE's duty to defend.

### III.   Summary Judgment Motions

Orion Houston and Defendant ACE each ask the court to rule in its favor on the duty to defend.   Defendant ACE's motion, as indicated in the prior section, also seeks summary judgment on the duty to indemnify and on the extra-contractual claims.   The court

---

[49]      Id. p. 3.

has considered all of the arguments of the parties and has concluded that the only issue that can be resolved at this time is the duty to defend.

**A.   Summary Judgment Legal Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

Cross-motions for summary judgment are considered separately under this rubric. See Shaw Constructors v. ICF Kaiser Eng'rs, 395 F.3d 533, 538-39 (5th Cir. 2004). Each movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, and the court views the evidence in favor of each nonmovant. See id.; Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009)(quoting Ford Motor Co. v. Tex.

<u>Dep't of Transp.</u>, 264 F.3d 493, 499 (5th Cir. 2001)).

## B.  <u>Insurance Law</u>

Under Texas law,[50] the insured generally bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.  See <u>SWE Homes, LP v. Wellington Ins. Co.</u>, 436 S.W.3d 86, 90 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies.  <u>Guar. Nat'l Ins. Co. v. Vic Mfg. Co.</u>, 143 F.3d 192, 193 (5th Cir. 1998).

### 1.  Contract Interpretation

Insurance policies are subject to the rules of contract interpretation.  <u>State Farm Lloyds v. Page</u>, 315 S.W.3d 525, 527 (Tex. 2010).  In construing the terms of a written contract, the court's primary goal is always "to determine the contracting parties' intent through the policy's written language." <u>Id.</u>  To this end, the court reads all parts of the contract as a whole and gives effect to each word, clause, and sentence so that no part of the agreement is rendered inoperative.  <u>Id.</u>  Courts construe terms

---

[50]     The parties apparently agree that Texas law applies to this insurance dispute.  <u>See, e.g.,</u> Doc. 13, Orion Houston's MPSJ pp. 10-12; (citing Texas insurance law); Doc. 14, Def. ACE's Resp. to Orion Houston's MPSJ pp. 9-11 (same).

in contracts to have their plain, ordinary meaning unless something in the contract itself indicates that the parties intended for them to have particular definitions.   <u>Tanner v. Nationwide Mut. Fire Ins. Co.</u>, 289 S.W.3d 828, 831 (Tex. 2009).

When a contract as worded can be given "a definite or certain legal meaning," then it is unambiguous as a matter of law, and the court enforces it as written.   <u>WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.</u>, 844 F.3d 473, 478 (5th Cir. 2016)(applying Texas law).   The court will not find an insurance contract ambiguous because it lacks clarity or because the parties disagree on its meaning.   <u>Id.</u>; <u>Page</u>, 315 S.W.3d at 527.   "Instead, a contract is ambiguous 'only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction.'"   <u>WBCMT 2007 C33 OFFICE 9720, L.L.C.</u>, 844 F.3d at 478 (quoting <u>McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.</u>, 736 F.3d 375, 378 (5th Cir. 2013)).

**2.  Duty to Defend**

In Texas, an insurer's duty to defend and its duty to indemnify are two distinct and separate duties.   <u>McGinnes Indus. Maint. Corp. v. Phoenix Ins. Co.</u>, 477 S.W.3d 786, 803 (Tex. 2016). In determining whether an insurer has a duty to defend, courts follow the eight-corners rule.   <u>Ewing Const. Co., Inc. v. Amerisure Ins. Co.</u>, 420 S.W.3d 30, 33 (Tex. 2014).   "Under that rule, courts look to the facts alleged within the four corners of the pleadings,

15

measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." Id. The court examines the factual allegations that give rise to the damages claims, not the legal conclusions or theories asserted. Id. Doubts about the duty to defend are resolved in favor of the insured.  Id.

"Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination . . . ." Liberty Mut. Ins. Co. v. Graham, 473 F.3d 596, 600 (5th Cir. 2006)(applying Texas law).  The Texas Supreme Court, in dicta, favorably cited a Fifth Circuit Court of Appeals decision in which the federal court predicted that Texas' highest court would recognize an exception to the eight-corners rule only "when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308-09 (Tex. 2006)(quoting Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 (5th Cir. 2004)).

### 3.  Duty to Indemnify

The duty to indemnify is triggered by the actual facts establishing the insured's liability in the underlying litigation,

16

which may differ slightly from the alleged facts.  <u>Hartford Cas.</u>
<u>Ins. Co. v. DP Eng'q, L.L.C.</u>, 827 F.3d 423, 430 (5th Cir.
2016)(applying Texas law).   Therefore, with one recognized
exception, the duty to indemnify must be decided after a judgment
has been entered in the underlying suit.  <u>Id.</u> (citing <u>Farmers Tex.</u>
<u>Cty. Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 84 (Tex. 1997)).  The
recognized exception applies when "the same reasons that negate the
duty to defend likewise negate any possibility the insurer will
ever have a duty to indemnify."  <u>Id.</u> (quoting <u>Griffin</u>, 955 S.W. 2d
at 84).

## C.  **Discussion**

For coverage to exist under either of the Policy's Employers
Responsibility Coverages, the injured individual must be Orion
Houston's employee and the injury must have arisen out of and in
the course of employment by Orion Houston.  The Policy definition
of "employee" gave two options: (1) "anyone employed by" Orion
Houston; or (2) an independent contractor under written contract
with Orion Houston if Orion Houston agreed to provide that
independent contractor with voluntary compensation.

To better deconstruct the Policy's first definition of
"employee," the court turns to the plain, ordinary meaning of the
term "employed by."  One of the definitions of "employ" as defined
by <u>Black's Law Dictionary</u> (10th Ed. 2014) is "To hire."  The word
"hire" is defined, in relevant part, to mean: "To engage the labor

17

or services of another for wages or other payment." Black's Law Dictionary (10th Ed. 2014).   With the aid of the dictionary definitions, the Policy's definition of "employee" can be given the following definite legal meaning: anyone whose labor or services Orion Houston engaged for wages or other payment.

The court turns to the allegations in the Santiago Lawsuit. The Santiago Lawsuit's fourth amended petition contained many allegations that globally attributed actions and omissions to all of the defendants and collectively referred to the employment statuses of the individuals who were killed and injured.   The pleading focused on the actions and omissions of the BP entities that allegedly caused the injuries suffered during the attack on BP's facility.   Orion Houston's specific role in Mr. Santiago's death was not made clear.   Although that is not the concern of this court, discerning what facts pertain to Orion Houston's relationship to Mr. Santiago is the court's concern and is made more difficult by the pleading style.   Nevertheless, the court has found a few allegations that address the relevant issues.   Those allegations, in combination with what is not alleged, provide the basis for the court's decision without the need to review any extrinsic evidence.

As the party with the burden of proving coverage, Orion Houston must demonstrate that the facts alleged within the four corners of the live pleading in the Santiago Lawsuit indicate that

Mr. Santiago was an employee of Orion Houston and that Mr. Santiago's injury arose out of and in the course of his employment by Orion Houston.

Nothing in the pleading gives rise to the potential that Mr. Santiago's labor or services were engaged by Orion Houston for wages or other payment.  In fact, the allegations create a different picture: (1) BP *hired* Orion Houston, which *recruited* Mr. Santiago to *work at BP's In Amenas facility*; (2) Orion Houston contracted with BP to *hire contractors, like Mr. Santiago*, to *work at the In Amenas facility*; (3) Orion Houston entered into an agreement with Mr. Santiago to *provide services to* Orion Houston's *clients*; and (4) Mr. Santiago was *assigned to BP to work in Algeria*.[51]

These allegations demonstrate that BP was Orion Houston's client, and Orion Houston recruited Mr. Santiago as a contractor assigned to provide services to BP at BP's In Amenas facility.  The allegations indicate that Mr. Santiago provided services for BP, not for Orion Houston.  The alleged facts leave no room for the potential that Orion Houston engaged Mr. Santiago to perform labor or services for Orion Houston in exchange for wages or other payment.

Orion Houston contends that the Santiago Lawsuit pleading

---

[51]    See Doc. 13-1, Ex. 2-B to Orion Houston's MPSJ, 4th Am.  Orig. Pet. in <u>Santiago v. BP Am., Inc.</u>, Cause No. 2014-57278 (151st Dist. Ct., Harris Cty., Tex. Jan. 15, 2016) pp. 4, 16, 27.

stated that Mr. Santiago was an employee.  It did not.  Whereas some of the individuals who were injured in the attack were identified as employees of certain entities in the facts session, Mr. Santiago was identified as having entered into an agreement with Orion Houston and having been assigned to provide services to BP.[52]  The pleading labeled Orion Houston's role as recruiter, not employer, of Mr. Santiago.

The pleading contained two sentences in which Mr. Santiago's name appears with the word "employees:" (1) "Defendants were negligent . . . in failing to protect its [sic] *contractors, employees and invitees*, including Mr. Santiago [and the other injured individuals] from conditions . . . ;" and (2) "During the time Mr. Santiago [and the other injured individuals were] at the In Amenas facility, they were *Defendants' invitees, employees, contractors, and/or workers*."[53]  The court disagrees with Orion Houston that the alternative sentence structure of these statements is sufficient to raise the potential that Mr. Santiago was an employee of Orion Houston.  Such a conclusion contradicts the only allegation in which Mr. Santiago is directly connected with his status, wherein he was identified as a contractor at the BP

---

[52]     *See* *id.* pp. 27-28.

[53]     *Id.* pp. 35, 40.  The pleading refers many other times to contractors, invitees, employees, and/or workers in connection with the alleged imminent danger of an attack, the defendants' alleged failure to provide safe conditions, and other allegations.  *See, e.g., id.* p. 37.

facility.[54]

The identification of Mr. Santiago as a contractor implicates the second aspect of the definition of "employee," which included independent contractors who entered written contracts with Orion Houston in which Orion Houston agreed to pay voluntary compensation. The Santiago Lawsuit stated that Mr. Santiago had entered an agreement with Orion Houston to provide services to Orion Houston's clients. However, as one might expect, the pleading did not specify whether the agreement was in writing or whether it included Orion Houston's agreement to pay Mr. Santiago voluntary compensation.

The parties disagree on whether the court may look at the contract between Mr. Santiago and Orion Houston to clarify the issue. They both contend, however, if the court did examine the contract, the court would find support for their divergent views on the duty to defend. The court is not inclined to go beyond the eight corners of the pleading and insurance contract to explore whether his contractor relationship with Orion Houston fell within the Policy's definition of employee.

Instead, the court finds that, regardless of the answer to that question, the Santiago Lawsuit did not allege that Mr. Santiago's death arose out of and in the course of employment by

---

[54]    See id. p. 16.  The court finds unavailing Orion Houston's attempt to discount this statement on the basis that it was in the statement of jurisdiction and venue.

Orion Houston.  Nothing in the pleading remotely suggested that Mr. Santiago's work at BP's facility was in the course of his employment by Orion Houston.  As discussed above, Mr. Santiago was assigned to perform services for BP at BP's facility; he was not conducting business for Orion Houston.  Thus, even if Mr. Santiago could be considered an employee pursuant to the allegations, his injury did not fall within the Employers Responsibility Coverages.

The court therefore concludes that the factual allegations in the Santiago Lawsuit do not trigger Defendant ACE's duty to defend under either the Voluntary Compensation or the Contingent Employers Liability coverage provisions.  However, this determination is not dispositive of the duty to indemnify or the extra-contractual claims.  Given the extent of briefing and the additional evidence cited by the parties, the better course of action is to delay those decisions until the facts of the Santiago Lawsuit are adjudicated. Orion Houston will still bear the burden of showing, based on the adjudicated facts, that Mr. Santiago's relationship with Orion Houston fit within the Employers Responsibility Coverages' definition of employee and that his death arose out of and in the course of his employment with Orion Houston.  The court will consider dispositive motions on the duty to indemnify and the extra-contractual claims at a later date, if necessary.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Orion

Houston's motion be **DENIED** and Defendant ACE's motion be **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' Rule 56(d) motion is **GRANTED**.

The  Clerk  shall  send  copies  of  this  Memorandum, Recommendation,  and  Order  to  the  respective  parties  who  have fourteen  days  from  the  receipt  thereof  to  file  written  objections thereto  pursuant  to  Federal  Rule  of  Civil  Procedure  72(b)  and General  Order  2002-13.   Failure  to  file  written  objections  within the  time  period  mentioned  shall  bar  an  aggrieved  party  from attacking  the  factual  findings  and  legal  conclusions  on  appeal.

The  original  of  any  written  objections  shall  be  filed  with  the United  States  District  Clerk  electronically.   Copies  of  such objections  shall  be  mailed  to  opposing  parties  and  to  the  chambers of  the  undersigned,  515  Rusk,  Suite  7019,  Houston,  Texas  77002.

**SIGNED**  in  Houston,  Texas,  this  $\underline{24^{th}}$  day  of  February,  2017.

_____
U.S. MAGISTRATE JUDGE