United States District Court
Southern District of Texas
**ENTERED**
February 21, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ORION PROJECT SERVICES (HOUSTON) LLC and ORION ENGINEERING SERVICES LTD., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-1401 |
| ACE AMERICAN INSURANCE COMPANY and THE HAYS GROUP, INC., | § § § § | |
| Defendants. | § § | |

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Pending before the court[1] is The Hays Group, Inc.'s ("Hays") Motion for Summary Judgment (Doc. 69). The court has considered the motion, the response, the reply, the surreply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Hays' motion be **DENIED**.

## I.  Case Background

Orion Project Services (Houston) LLC ("Orion Houston") and Orion Engineering Services Ltd. ("Orion Engineering")(collectively "Plaintiffs") originally filed this insurance action against Orion Houston's commercial liability insurer for declaratory relief and damages, alleging breach of the duty to defend and indemnify and violations of the Texas Insurance Code. Plaintiffs later amended

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 23, Ord. Dated Sept. 16, 2016.

to allege, in the alternative, claims against Hays, an insurance broker.

## A.   Orion Houston's Contract and Communication with Hays

Orion Houston retained Hays in 2009, and Hays assigned Ted Dimitry ("Dimitry") to Orion Houston's account.[2]  Hays and Dimitry thereby assumed the responsibility of procuring insurance policies for Orion Houston.[3]  Hays' client offerings included assessment of risk exposure for the client's type of business, assessment of the costs of transferring those risks via insurance, presentation of quotes for insurance coverage, procurement of policies selected by the client, and review of policy coverage.[4]  On behalf of Orion Houston, Hays procured various insurance policies, including the International Advantage Commercial Insurance Policy (the "Policy") from ACE American Insurance Company ("ACE").[5]

---

[2]      See Doc. 69-1, Ex. A to Hays' Mot. for Summ. J., Int'l Advantage Comm. Ins. Policy p. 7 of 293; Doc. 69-8, Ex. H to Hays' Mot. for Summ. J., Letter from Keith McKenzie to William Allen Dated Apr. 21, 2015; Doc. 75-1, Ex. A to Pls.' Resp. to Hays' Mot. for Summ. J., Dep. of Kevin Eukel pp. 29-30; Doc. 75-1, Ex. D to Pls.' Resp. to Hays' Mot. for Summ. J., Hays Renewal Proposal p. 35.  In referencing the International Advantage Commercial Insurance Policy (the "Policy"), the court cites to the docket page number rather than the internal document page number.  As of January 5, 2012, the relationship between Hays and Orion Houston was governed by the Insurance Consulting Agreement of the same date.  See Doc. 69-13, Ex. M to Hays' Mot. for Summ. J., Ins. Consulting Agreement.

[3]      Doc. 75-1, Ex. A to Pls.' Resp. to Hays' Mot. for Summ. J., Dep. of Kevin Eukel pp. 26-27.

[4]      See id. pp. 27-28; Doc. 75-1, Ex. D to Pls.' Resp. to Hays' Mot. for Summ. J., Hays Renewal Proposal pp. 3, 33-34.

[5]      See Doc. 75-1, Ex. A to Pls.' Resp. to Hays' Mot. for Summ. J., Dep. of Kevin Eukel p. 42; Doc. 69-1, Ex. A to Hays' Mot. for Summ. J., Int'l Advantage Comm. Ins. Policy pp. 7, 11, 15, 21 of 293.

On September 20, 2010, Dave Willett ("Willett") an employee of Orion Engineering who managed Plaintiffs' workers placed at a project in Baku, Republic of Azerbaijan, emailed Malcolm Douglas ("Douglas"), the president of Orion Houston, to report that one of the contractors objected to Clause 18 of the Independent Contractor Agreement used by Orion Houston.[6]  The remainder of the email stated:

> [The contractor] is asking for Orion to provide EL/PL cover for him while he works in Baku.  I am concerned about this not only for him but for the other guys that we have working out there; many go offshore for several days a year.
>
> Can you explain why you do not provide liability cover or workman's compensation for contractors?
>
> The clause reads[:]
>
> **18.   Indemnity and Insurance.**
>
>> Contractor is responsible for carrying all liability insurance required for the assignment referenced in Section 3, above.  Further, Contractor is responsible for the conduct of his staff and, as such, agrees to indemnify Orion for any of his or his staff's conduct that results in any claim being filed against Orion; including but not limited to indemnity for any liability resulting from such conduct and indemnifying Orion for its attorneys' fees and costs in such action.
>
> I would appreciate your comments on this one as the Orion Group insurance certificate states that Orion Project Services LLC are covered within the worldwide liability

---

[6]     See Doc. 69-13, Ex. M to Hays' Mot. for Summ. J., Ins. Consulting Agreement p. 3; Doc. 75-1, Ex. K to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Dave Willett to Douglas Dated Sept. 20, 2010; Doc. 75-1, Attach. 2 to Pls.' Resp. to Hays' Mot. for Summ. J., Decl. of Keith McKenzie ¶ 2.

insurance cover.[7]

On the day of receipt, Douglas forwarded the email to Dimitry with a request that he telephone Douglas to discuss the inquiry.[8] Dimitry replied by email, stating in part:

> I can tell you that your non-US Liabilities "should" cover this.  However, I don't recall if your Application for this coverage included Baku/Azerbaijan.
>
> I've copied Roshan[ara Ahmed ("Ahmed")] on this so she can research this and advise if Azerbaijan is included. If it is, you're "good to go."[] If it is not, we'll request this of the carrier and will advise if there is any additional cost.[9]

Ahmed reported that the Non-US liability excluded certain countries, which she listed.[10]  The list did not include Republic of Azerbaijan.[11]  Dimitry asked Ahmed to notify Douglas "that this is covered."[12]

In an email dated October 5, 2010, Douglas sought the following information about Clause 18:

> I attach part of the contract we give to 1099 contractors working overseas.  We pay them from Houston.  Most are

---

[7]     Doc. 75-1, Ex. K to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Dave Willett to Douglas Dated Sept. 20, 2010.

[8]     See Doc. 75-1, Ex. K to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Douglas to Dimitry Dated Sept. 20, 2010.

[9]     Doc. 75-1, Ex. K to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Dimitry to Douglas Dated Sept. 20, 2010.

[10]     See Doc. 75-1, Ex. K to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Ahmed to Dimitry Dated Sept. 20, 2010.

[11]     See id.

[12]     Doc. 75-1, Ex. K to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Dimitry to Ahmed Dated Sept. 20, 2010.

4

UK[] or other European nationals.

I assume from our correspondence that we do cover them for Public Liability under Orion's policy handled in the UK and Employers Liability under our Ace policy.  Can you confirm?  We would if that is the case change the wording of clause 18 to say that.[13]

Dimitry replied:

My comments regarding "Claus[e] 18 - Indemnity and Insurance" in this case [are] as follows:
Contractor is responsible for carrying all liability insurance required for the assignment referenced in Section 3, above.  Further, Contractor is responsible for the conduct of his staff and, as such, agrees to indemnify Orion for any of his or his staff's conduct that results in any claim being filed against Orion including but not limited to indemnity for any liability resulting from such conduct and indemnifying Orion for its attorneys' fees and costs in such action.

I agree that the wording needs to be changed.  Also, does the "Contractor" refer to a commercial entity or an "individual[?]"  If it is the latter, I am not sure if the references to "his staff" would apply. . . . I've copied Iain [("Henry")] to get his take on the Public Liability aspect but you can add the following clause for the Employer's Liability for the Third Country Nationals (the Britons and Europeans being paid by Orion Houston):
*Orion Project Services, LLC agrees to provide Voluntary Compensation benefits for all Contractors (or Contractor's staff [if relevant]), which extends benefits similar to the Individual Contractor's or Contractor's staff member's country of origin.  Additionally, Orion agrees to extend Employer's Liability coverage to all Contractors (or Contractor's staff [if relevant]) up to US$1,000,000.*

You may also wish to add the following (at your discretion):
*Furthermore, Orion agrees to provide insurance coverage for Automobile Bodily Injury and Property Damage in the amount of US$1,000,000 Combined Single Limit, including*

---

[13]    Doc. 69-5, Ex. E to Hays' Mot. for Summ. J., Email from Douglas to Dimitry Dated Oct. 5, 2010.

> *Hired (rented) and Non-Owned Autos.*
> *Additional "Accidental Death & Dismemberment" (AD&D)*
> *coverage in the amount of US$25,000 is extended to each*
> *Contractor (or Contractor's staff member [if relevant])*
> *as "Employees" of Orion Project Services, LLC.  There is*
> *an aggregate limit of US$1,500,000 AD&D coverage for all*
> *"Employees" on Orion's policy.*
>
> Trust this is self-explanatory.  I would look to .
> . . Henry and his team at Central for comments on how the
> UK-brokered "Public Liability" policy [sic] and his
> recommendations to Clause 18 arising from that.  I have
> copied [Henry] and Margaret Fraser ("Fraser") to
> facilitate that process.[14]

The email exchange continued with a response from Douglas:
"The contract evolved from a contract to a person working as their
own incorporated company.  Most of the contract remains the same
when the person works as a 1099, but insurances should be as you
have written.  I will wait for [Henry]'s comments before
changing."[15]  Five days later, Douglas inquired whether Dimitry had
heard back from Henry or Fraser.[16]

On October 15, 2010, Douglas sent Dimitry and Henry an email
that was copied to Willett that asked:

> Does the narrative below comply with our insurances?
> "Orion [Houston] provide[s] voluntary Compensation
> Benefits for all contractors which extends benefits
> similar to the individual contractor's country of origin
> up to $1,000,000."
> I could not follow how the contractor indemnifying

---

[14]     Doc. 69-5 Ex. E to Hays' Mot. for Summ. J., Email from Dimitry to
Douglas Dated Oct. 5, 2010.

[15]     Doc. 69-5 Ex. E to Hays' Mot. for Summ. J., Email from Douglas to
Dimitry Dated Oct. 5, 2010.

[16]     Doc. 69-5 Ex. E to Hays' Mot. for Summ. J., Email from Douglas to
Dimitry Dated Oct. 11, 2010.

```
Orion would work? [sic]
Could we leave it as above[]?[17]
```

Dimitry responded, "This works from my end on the Non-US Liability Package with ACE."[18]

## B.  The Insurance Policy Terms

Hays advocated that Orion Houston renew the Policy for the period September 4, 2012, to September 4, 2013.[19]  The Policy included a wide variety of coverages, including Employers Responsibility Coverages.[20]  Under Employers Responsibility Coverages, the Policy included Voluntary Compensation Coverage and Contingent Employers Liability Coverage.[21]

The Voluntary Compensation Coverage applied:

> to any claim for bodily injury by accident, bodily injury by disease or bodily injury by "endemic disease" whether or not it is subject to or governed by any "workers' compensation law".  This bodily injury must be injury to [the insured's] "employee" and must arise out of and in the course of employment by [the insured].  Bodily injury includes resulting death.[22]

Pursuant to the Contingent Employers Liability Coverage, ACE

---

[17]    Doc. 69-6, Ex. F to Hays' Mot. for Summ. J., Email from Douglas to Dimitry & Henry Dated Oct. 15, 2010.

[18]    Doc. 69-6, Ex. F to Hays' Mot. for Summ. J., Email from Dimitry to Douglas Dated Oct. 15, 2010.

[19]    See Doc. 69-1, Ex. A to Hays' Mot. for Summ. J., Int'l Advantage Comm. Ins. Policy pp. 7, 11, 15, 21 of 293; Doc. 75-1, Ex. A to Dep. of Kevin Eukel pp. 46-47.

[20]    Id. pp. 45-60 of 293.

[21]    See id.

[22]    Id. p. 201 of 293.

agreed to pay "all sums [the insured] legally must pay as damages because of bodily injury to [the insured's] 'employees,' provided the bodily injury is covered."[23]   The covered damages included those: "for which [the insured is] liable to a third party by reason of a claim or suit against [the insured] by that third party to recover the damages claimed against such third party as a result of injury to [the insured's] 'employee';" and "because of bodily injury to [the insured's] 'employee' that arises out of and in the course of employment, claimed against [the insured] in a capacity other than as employer."[24]

The Policy provided two definitions of the term "employee" for purposes of both of the Employers Responsibility Coverages.[25]   It defined "employee" as "anyone employed by the Named Insured including any voluntary worker.   At [the insured's] option, 'employee' may include individuals who are independent contractors with whom [the insured] ha[s] a written contract in which [the insured] agree[s] to provide them the benefits of 'voluntary compensation.'"[26]

## C.   <u>The Siege and Resulting Litigation</u>

BP, a global energy business, contracted with Orion Houston to

---

[23]      <u>Id.</u> p. 54 of 293.

[24]      <u>Id.</u>

[25]      <u>See id.</u> p. 58 of 293.

[26]      <u>Id.</u>

hire contractors to work at its facility at In Amenas, People's Democratic Republic of Algeria.[27]   In 2009, Orion Houston initially entered into a contract with Iluminado Santiago Jr. ("Mr. Santiago") to provide services to its clients.[28]   Mr. Santiago's contract included Clause 18 with the same wording as that to which the contractor assigned to Baku later objected.[29]   Orion Houston assigned Mr. Santiago to work at the In Amenas facility as an Electrical Hazardous Area Installation Inspector.[30]   After the 2010 email discussion about Clause 18, Orion Houston renewed Mr. Santiago's contract in March 2011, December 2011, July 2012, and November 2012 without any modification of Clause 18.[31]

On January 16, 2013, terrorists/militants infiltrated BP's facility and took control.[32]   Mr. Santiago was one of the individuals who was captured, held hostage and, ultimately killed.[33]

---

[27]   See Doc. 69-2, Ex. B to Hays' Mot. for Summ. J., 4th Am. Orig. Pet. in Santiago v. BP Am., Inc., Cause No. 2014-57278 (151st Dist. Ct., Harris Cty., Tex. Jan. 15, 2016) p. 16.

[28]   See Doc. 69-3, Ex. C to Hays' Mot. for Summ. J., Mr. Santiago's Indep. Contractor Agreement.

[29]   See id. p. 4.

[30]   See id. p. 7; Doc. 69-2, Ex. B to Hays' Mot. for Summ. J., 4th Am. Orig. Pet. in Santiago v. BP Am., Inc., Cause No. 2014-57278 (151st Dist. Ct., Harris Cty., Tex. Jan. 15, 2016) p. 27.

[31]   See Doc. 69-3, Ex. C to Hays' Mot. for Summ. J., Mr. Santiago's Contract Renewals.

[32]   See Doc. 69-2, Ex. B to Hays' Mot. for Summ. J., 4th Am. Orig. Pet. in Santiago v. BP Am., Inc., Cause No. 2014-57278 (151st Dist. Ct., Harris Cty., Tex. Jan. 15, 2016) pp. 5, 33.

[33]   See id. pp. 5, 34-35.

In 2014, Estrella Santiago ("Mrs. Santiago"), along with her children and many other individuals, filed suit in the 151st District Court of Harris County against ten BP entities and a BP America Production manager serving at the In Amenas facility, asserting claims of negligence and gross negligence (the "Santiago Lawsuit").[34]  Mrs. Santiago, who was an heir of Mr. Santiago, was the only plaintiff who named Orion Houston as a defendant.[35]

Hays facilitated Orion Houston's submission of the Santiago Lawsuit to ACE for coverage consideration.[36]  After reviewing the Santiago Lawsuit, the Policy, documents related to the Santiago Lawsuit, and communications with Orion Houston, ACE refused to provide a defense.[37]  In a letter dated November 9, 2015, ACE informed Orion Houston of its decision.[38]

## C.  __Procedural History of this Lawsuit__

Plaintiffs filed this action on May 18, 2016, against ACE, seeking declaratory judgment on the issues of duty to defend and duty to indemnify, as well as asserting breach of contract and

---

[34]   See id. pp. 1-3, 7-14, 35.

[35]   Id. p. 3.

[36]   See Doc. 30, Decl. of Stephen J. Davis ¶ 5; Doc. 75-1, Ex. F to Pls.' Resp. to Hays' Mot. for Summ. J., Email from Ted Conti to ACE Dated Oct. 22, 2014.

[37]   See Doc. 30, Decl. of Stephen J. Davis ¶¶ 6, 9.

[38]   See id. ¶ 9.

violations of the Texas Insurance Code Chapter 541.[39]   In August 2016, Orion Houston filed a motion for partial summary judgment regarding the duty to defend.[40]   During the briefing of that dispositive motion, the parties stipulated to Plaintiffs' filing an amended complaint to add claims against Hays.[41]

On September 3, 2016, Plaintiffs filed the amended complaint.[42] As against Hays, they alleged that, in the event that the coverage claims against ACE were not resolved in their favor, Hays was liable for breaching the following and other duties as an insurance intermediary: (1) "to procure and/or provide adequate insurance coverage in accordance with [Plaintiffs'] requests;" (2) "to properly inform [Plaintiffs] concerning [their] insurance;" (3) "to examine the policies after they were issued in order to verify that the coverage sought was actually delivered;" and (4) "to advise [Plaintiffs] as to how to maximize coverage[.]"[43]   Plaintiffs also alleged that Hays violated the Texas Insurance Code Chapter 541 by omitting material facts, making statements in a manner that was misleading, and failing to disclose matters that were required to

---

[39]     See Doc. 1, Pls.' Compl. pp. 13-17 of 18.   The court cites to the docket page numbers because the complaint itself is unnumbered.

[40]     See Doc. 13, Orion Houston's Mot. for Partial Summ. J.

[41]     See Doc. 15, Stipulation Dated Sept. 2, 2016; Doc. 16, Pls.' 1st Am. Compl.

[42]     See Doc. 17, Pls.' (Corrected) 1st Am. Compl.

[43]     Id. pp. 19-20 of 23.   The court cites to the docket page number because the amended complaint itself is unnumbered.

11

be disclosed.[44]

On October 7, 2016, Hays answered and asserted various defenses, including contributory negligence, failure to mitigate damages, and failure to establish causation.[45] On October 24, 2016, ACE filed a motion for summary judgment.[46]

On February 24, 2017, the court issued a memorandum and recommendation on Orion Houston's Motion for Partial Summary Judgment and ACE's Motion for Summary Judgment.[47] The court concluded that the factual allegations in the underlying suit did not trigger ACE's duty to defend because none satisfied either the Policy's definition of "employee" or alleged that Mr. Santiago's death arose out of and in the course of employment by Orion Houston.[48] In its discussion, the court refused to reach beyond the underlying pleading and the Policy to explore whether Mr. Santiago's contract with Orion Houston provided for voluntary compensation, which would inform whether Mr. Santiago met the alternative definition of "employee."[49] The court also left undecided the questions of duty to indemnify and extra-contractual

---

[44]   See id. pp. 20-21 of 23.

[45]   See Doc. 28, Hays' Ans. to Pls.' 1st Am. Compl.

[46]   See Doc. 29, ACE's Mot. for Summ. J.

[47]   See Doc. 42, Mem., Recom., & Ord.; Doc. 46, Ord. Dated Mar. 23, 2017.

[48]   See Doc. 42, Mem., Recom., & Ord. pp. 17-22.

[49]   See id. p. 21.

liability until after the underlying suit was decided.[50]

On April 5, 2017, Hays sought leave to amend its answer to add the defense that limitations barred the misrepresentation and/or procurement claims against Hays.[51]   On April 18, 2017, Orion Houston, ACE, and Hays unsuccessfully attempted mediation.[52]   On April 26, 2017, the court granted Hays leave to amend its answer.[53] On May 3, 2017, Hays filed a motion to designate Central Insurance Services, Ltd., as a responsible third party pursuant to Texas Civil Practice and Remedies Code Chapter 33, and the court granted the motion on May 4, 2017.[54]  Shortly thereafter, Plaintiffs and ACE entered into a settlement agreement to resolve the remaining claims asserted by each against the other and later filed a joint motion to dismiss those claims, which the court granted.[55]

Hays filed the pending motion for summary judgment on July 26, 2017.[56]  Pursuant to a two-week extension, Plaintiffs responded on

---

[50]    See id. p. 22.

[51]    See Doc. 48, Hays' Opposed Mot. for Leave to File an Am. Ans. p. 2.

[52]    See Doc. 50, Alternative Dispute Resolution Mem.

[53]    See Doc. 55, Ord. Dated Apr. 26, 2017.

[54]    See Doc. 57, Hays' Uncontested Mot. for Leave to Designate Responsible 3ᵈ Party; Doc. 58, Ord. Dated May 4, 2017.

[55]    See Doc. 66, Notice of Pls.' Withdrawal of Mot. for Entry of Final J. on the Duty to Defend p. 1; Doc. 70, Jt. Mot. to Dismiss Cls. Between Pls. & ACE; Doc. 71, Ord. Dated Aug. 4, 2017.

[56]    See Doc. 69, Hays' Mot. for Summ. J.

August 30, 2017.[57]  The parties filed additional briefs, and Hays filed objections to the evidence Plaintiffs filed in support of their surreply, to which Plaintiffs responded.[58]

The court now takes the pending motion for summary judgment under consideration.  First the court addresses Hays' objections to Plaintiffs' surreply evidence.  Hays objects to ten exhibits that Plaintiffs submitted in support of the assertion that foreign commercial general liability coverage was available to purchase for the 2012-2013 coverage period.  The court does not reach the dispute to which these exhibits are directed and does not consider any incompetent summary judgment evidence in reaching its ruling. Hays' objections to Plaintiffs' evidence are **OVERRULED.**

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Stauffer v. Gearhart</u>, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby,</u>

---

[57]    <u>See</u> Doc. 72, Agreed Mot. to Extend Filing Deadlines Concerning Hays' Mot. for Summ. J.; Doc. 73, Ord. Dated Aug. 11, 2017; Doc. 75, Pls.' Resp. to Hays' Mot. for Summ. J.

[58]    <u>See</u> Doc. 80, Hays' Reply to Pls.' Resp. to Hays' Mot. for Summ. J.; Doc. 81, Pls.' Surreply to Hays' Reply to Pls.' Resp. to Hays' Mot. for Summ. J.; Doc. 82, Hays' Objs. to Pls.' Surreply & Evid. in Support; Doc. 83, Pls.' Resp. to Hays' Objs. to Pls.' Surreply & Evid. in Support.

Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.  Discussion

Orion Houston pled two causes of action against Hays: insurance intermediary liability and violations of Texas Insurance

Code Chapter 541.  As to the first of these, Plaintiffs' pleading conflates concepts of negligence, breach of contract, and negligent misrepresentation,[59] rendering it difficult to identify which cause of action they intended to plead.  Regardless of the cause of action, Plaintiffs pled that Hays' actions or omissions were the proximate cause of Plaintiffs' damages.  Plaintiffs also alleged that Hays violated the Texas Insurance Code by engaging in unfair insurance practices that resulted in Plaintiffs' damages.

This common issue of causation is the issue on which Hays' motion for summary judgment focuses.  Hays argues that Plaintiffs cannot show that anything Hays did or did not do caused coverage to fail.  Hays addresses only two aspects of Plaintiffs' grievance with Hays' conduct.  One concerns the Policy's War Coverage Endorsement.  In response to the motion for summary judgment, Plaintiffs clarify that their claims against Hays do not relate to the Policy's War Coverage Endorsement.  Taking Plaintiffs at their word, the court finds that they are not pursing any claim involving the War Coverage Endorsement and that Hays' argument on the matter is irrelevant.

The second aspect of Plaintiffs' claims against Hays concerns

---

[59]    For example, Plaintiffs alleged, in its first cause of action, all of the following: (1) that Hays owed duties to structure Orion Houston's insurance and to advise how to structure operations to maximize coverage and avoid gaps; (2) that Hays' breach of its obligations was the proximate cause of Orion Houston's damages; (3) that Orion Houston justifiably relied on Hays' representations regarding coverage; and (4) that Hays contractually undertook certain obligations.  See Doc. 17, Pls.' (Corrected) 1st Am. Compl. pp. 19-20 of 23.

the failure of coverage because Mr. Santiago did not qualify as an "employee" under the Policy.  Plaintiff agrees that this is an issue.  Hays takes the position that Mr. Santiago did not fall within either prong of the Policy's definition of "employee" because he was an independent contractor for whom Orion Houston did not provide voluntary compensation benefits.  Hays challenges Plaintiffs' assertion that Hays breached its duties by failing to procure coverage for Mr. Santiago's injury and by misrepresenting that such coverage existed for Orion Houston's foreign workers.

Hays points to evidence of communications regarding Clause 18 of the Independent Contractor Agreement in which, it argues, it advised Orion Houston, prior to Mr. Santiago's injury, to modify Clause 18 of the contract in order to provide voluntary compensation benefits.  If Plaintiffs had made the modification, the argument continues, Mr. Santiago would have qualified as an employee under the Policy's second definition of that term.  Hays argues that Orion Houston failed to follow that advice and, in fact, subsequently extended the term of Mr. Santiago's contract four times without including the modification.  Hays places the blame for Orion Houston's damages on Orion Houston for failing to follow Hays' advice.  Plaintiffs respond that the evidence is in dispute regarding any advice that Hays provided about the modification of the Independent Contractor Agreements.  Plaintiffs also argue that Hays failed to "negate[] other avenues of

17

liability" and to address fault allocation for multiple causes.[60]

The summary judgment evidence includes communications between Orion Houston and Hays about the wording of Clause 18 of the Independent Contractor Agreement. However, the discussion began in response to a specific inquiry about one contractor's objection to the clause. The communications tend to show context-specific characteristics of the exchange. At certain points, it is unclear whether the two parties are even discussing Clause 18 at all, as when Dimitry confirms that the Republic of Azerbaijan is not one of the excluded countries. Dimitry never expressed the concern that a coverage gap existed due to the wording of Clause 18. No evidence definitively establishes that Hays advised Orion Houston to change the wording of Clause 18 in the Independent Contractor Agreements or risk the failure of coverage for injuries such as those suffered by Mr. Santiago.

In fact, Hays' corporate representative made statements during his deposition that suggest the opposite.[61] He testified, based on his interpretation of the email exchanges, that Dimitry did not specifically "tell Mr. Douglas that without this change there was no coverage under the ACE policy."[62] The corporate representative also agreed that Dimitry did not advise Orion Houston that the ACE

---

[60]    Doc. 75, Pls.' Resp. to Hays' Mot. for Summ. J. p. 1.

[61]    See Doc. 75-1, Ex. A to Pls.' Resp. to Hays' Mot. for Summ. J., Dep. of Kevin Eukel.

[62]    Id. p. 82.

policy did not cover the independent contractor who objected to Clause 18.[63]  In response to the question whether Dimitry raised "any issue with respect to the employment relationship" between Orion Houston and the objecting contractor, the corporate representative said, "Not specifically, but he isn't asked to either by Mr. Douglas."[64]

Before the jury reaches the issue of causation, it first must decide the very preliminary question of fact, to wit, whether Hays advised Orion Houston that it needed to modify Clause 18 of its contracts in order to satisfy the coverage provisions of the Policy.  Because no other legal analysis can take place before these facts are determined, the court does not address any of the other issues raised in the briefing.  Hays fails to meet its first burden on summary judgment of demonstrating that no genuine dispute of material fact exists.  The motion for summary judgment should be denied.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Hays' motion for summary judgment be **DENIED.**

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections

---

[63]     See id. p. 87.

[64]     Id. pp. 87-88.

thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of February, 2018.

_____
U.S. MAGISTRATE JUDGE